**COMPUTER ASSOCIATES INTER-
NATIONAL, INC., Petition-
er/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent/Cross–
Petitioner.**

**No. 00–1544.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 17, 2002.

Decided March 15, 2002.

David Bennet Ross argued the cause for the petitioner. Lori M. Meyers and Ronald A. Lindsay were on brief.

Jill A. Griffin, Attorney, National Labor Relations Board, argued the cause for the respondent. Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Frederick C. Havard, Attorney, National Labor Relations Board, were on brief. Jeffrey L. Horowitz, Attorney, National Labor Relations Board, entered an appearance.

Before: EDWARDS, HENDERSON and GARLAND, Circuit Judges.

Opinion for the court by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Computer Associates International, Inc. (CA) seeks review of a National Labor Relations Board (NLRB or Board) determination that CA violated section 8(a)(1) and (3) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), (a)(3), by terminating a subcontract with Cushman & Wakefield of Long Island (Cushman) to provide engineers at CA's Islandia, New York facility and thereby discharging the engineers in retaliation for their union activities. *See Computer Assocs. Int'l, Inc.,*

332 N.L.R.B. No. 108, 2000 WL 1699038 (Oct. 31, 2000). Crucial to the Board's holding was its finding that CA was a "joint employer" of the engineers. Because the engineers' union, Local 30 of the International Union of Operating Engineers (Union), had stipulated that Cushman was its sole employer and the Board cited no changed circumstances after the stipulation to support its finding that CA was a joint employer, we conclude the Board's joint employer finding is not supported by substantial evidence and we therefore grant CA's petition for review. We also grant the Board's cross-application insofar as it seeks to enforce the Board's separate unchallenged finding that CA violated section 8(a)(1) of the Act by using interrogations, threats and promises to discourage the engineers' union activities.[1]

## I.

In September 1991 CA, which designs, develops and markets computer software, entered into a management contract with Cushman, a real estate management company, to provide operating engineers to work at the soon-to-be-completed Islandia facility. The contract was for an initial 18–month term and month to month thereafter. Cushman staffed the facility with engineers either from other Cushman sites or referred by the Union's hiring hall.

The Union filed a petition to represent the engineers on May 11, 1992 identifying CA as the employer. An amended petition was filed in late May identifying CA and Cushman as "Co-employers." Shortly thereafter, however, the Union entered a

---

1. CA's petition for review challenges only the Board's Supplemental Decision and Order, dated October 31, 2000, which addressed only the section 8(a)(1) and (3) violation based on CA's termination of the subcontract. The Board's cross-application, however, also seeks enforcement of the Board's initial August 19, 1997 Decision and Order in which it found in addition that CA violated section 8(a)(1) through anti-union interrogation, threats and promises. Because CA has not contested this finding, we conclude the Board's cross-application should be granted.

stipulated election agreement identifying a single employer: "Cushman & Wakefield of Long Island." JA 364; *see also Computer Assocs. Int'l,* 324 N.L.R.B. 285, 288, 1997 WL 475904 (1997) (ALJ finding that "the Union ... entered into a stipulated election with Cushman as a single employer"); JA 297 (testimony of Cushman's manager that "[t]he parties agreed to a stipulation that listed Cushman & Wakefield as the sole employer and allowed them to have an election"). The Union won the election on a 5–0 vote and on July 1, 1992 the Board issued a Certification of Representative certifying Cushman as the employer.

On January 14, 1993 the Union filed a petition to represent a group of workers directly employed by CA at the Islandia facility. CA opposed the Union's organization efforts and on March 25, 1993 the CA employees voted unanimously against the Union. On April 2, 1993 CA's on-site manager assembled the engineers, who had supported the unsuccessful effort to unionize the CA employees, and informed them the Cushman contract was terminated.

On May 3, 1993 the Union filed an unfair labor practice charge with the NLRB and on June 30, 1993 the Board's General Counsel issued a complaint charging CA with violating the Act by (1) using interrogations, threats and promises to discourage the engineers' union activities and (2) discharging the engineers in retaliation for their union activities, on the theory that CA was, with Cushman, the engineers' joint employer.

On March 16, 1996, after a hearing, the Administrative Law Judge (ALJ) issued a decision finding that CA (1) violated section 8(a)(1) by its interrogations, threats and promises and (2) violated section 8(a)(1) and (3) by discharging the engineers. *See Computer Assocs. Int'l, Inc.,* 324 N.L.R.B. at 287–95. As to the second violation, however, the ALJ did not rely on the General Counsel's theory that CA was a joint employer that unlawfully discharged the engineers. To the contrary, the ALJ stated that the fact that the Union entered into a stipulated election agreement with Cushman as a single employer meant that "the General Counsel's contention that such joint-employer relationship exists is questionable." *Computer Assocs. Int'l, Inc.,* 324 N.L.R.B. at 288. Instead, relying on the NLRB's decision in *Esmark, Inc.,* 315 N.L.R.B. 763, 1994 WL 706184 (1994) (finding unfair labor practice by contracting company that coerced subcontractor into discharging employees for union activity), the ALJ based the violation on the fact that CA as contractor terminated the subcontract based on anti-union animus and thereby caused the engineers to lose their jobs at CA's Islandia facility.

In a decision issued August 19, 1997 the Board upheld the first violation but rejected the second, concluding the ALJ misapplied *Esmark,* and remanded for a determination whether CA was, as the General Counsel contended, a "joint employer." *Computer Assocs. Int'l, Inc.,* 324 N.L.R.B. at 285–87.

On remand, in a supplemental decision dated June 4, 1998, the ALJ determined CA was a joint employer and therefore liable for retaliatory discharge. *See Computer Assocs. Int'l, Inc.,* 332 N.L.R.B. No. 108, slip op. at 2–6. His recommended order required CA to offer to reinstate its subcontract with Cushman and to make the engineers whole. The decision did not explain why the ALJ changed his view that the Union's stipulation cast doubt on the existence of a joint-employer relationship.

In its Supplemental Decision and Order of October 31, 2000 the Board "decided to affirm the judge's rulings, findings, and conclusions and to adopt the judge's recommended Order, as modified." 332 N.L.R.B. No. 108, slip op. at 1 (footnotes

omitted). The Board modified the ALJ's order to require CA, in the event Cushman declined to reinstate the subcontract, to hire the engineers itself.

CA petitioned for review of the Board's finding in the Supplemental Decision that CA, in its capacity as joint employer, violated section 8(a)(1) and (3) by terminating the subcontract. CA also sought review of the ordered remedy. The NLRB cross-applied for enforcement.

## II.

 CA first, and foremost, challenges the Board's conclusion that CA was a joint employer of the engineers, arguing *inter alia* that the Union's May 1992 stipulation that Cushman was the sole employer decides the issue. We agree.

The Board's regulations require that "[a] petition for certification, when filed by an employee or group of employees or an individual or labor organization acting in their behalf, shall contain the following: ... The name of the employer." 29 C.F.R. § 102.61(a)(1). When, as here, the parties stipulate to the employer, the stipulation is binding on the parties absent a showing of "changed or unusual circumstances entitling [a party] to withdraw its stipulation." *Micro Pac. Dev. Inc. v. NLRB*, 178 F.3d 1325, 1335 (D.C.Cir.1999) (citing *NLRB v. Unifemme, Inc.*, 570 F.2d 230 (8th Cir. 1978); *Sunnyvale Med. Clinic*, 241 N.L.R.B. 1156, 1979 WL 9012 (1979); *NLRB v. Local Union No. 74, Int'l Ass'n of Marble, Slate & Stone Polishers*, 471 F.2d 43, 45–46 (7th Cir.1973)); *see also Dynair Servs., Inc.*, 314 N.L.R.B. 161, 162,

1994 WL 317995 (1994) ("With regard to the Employer's motion to withdraw from the Stipulated Election Agreement, it is well established that the Board will allow a party to withdraw from an Election Agreement only on a showing of unusual circumstances or by agreement of all the parties.") (citing *Sunnyvale*). The Union offered no changed circumstances below and the Board found none. Accordingly, the Board had no ground to deviate from the Union's stipulation of Cushman as the sole employer.

Relying on *Central Transport, Inc. v. NLRB*, 997 F.2d 1180, 1184–88 (7th Cir. 1993),[2] the Board now argues that there is a distinction between refusals to bargain and non-bargaining violations of the Act. Regarding the latter it maintains that CA can be a "joint employer in fact," notwithstanding the contrary stipulation and no changed circumstances. This was not, however, the theory on which the Board or the ALJ relied below and hence cannot be relied upon here. *See SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Both the Board and the ALJ concluded that CA was a joint employer— period. They offered no explanation of how that could be so in light of the undisputed, unambiguous stipulation of employer; indeed, neither the Board nor the ALJ (in his second decision) mentioned the stipulation at all.

Because the Board neither identified changed circumstances to support its finding that CA was a joint employer in the face of a stipulation and certification establishing CA was not nor offered an alterna-

---

**2.** In *Central Transport* the court rejected the Board's finding that Central had a joint employer duty to bargain with employees it leased from Big John Inc. because the union's representation petition and the Board's representation certification named only Big John Inc. as the employer. 997 F.2d at 1184–88. The court nevertheless upheld the finding that Central violated the Act by threatening and interrogating employees, stating, summarily, that "Central's lack of formal status as a joint employer does not excuse the threats to, and interrogations of its employees, nor the retaliatory layoffs." *Id.* at 1189. *Central* is distinguishable because the company there stipulated to joint employer status. *See Central Transport, Inc.* 306 N.L.R.B. 166, 166, 1992 WL 17779 (1992); 997 F.2d at 1186.

tive theory to overcome the presumptive validity of the designation of employer in the Certification of Representative, the Board's finding of the section 8(a)(1) and (3) violation based on joint employer status cannot stand.[3] Accordingly, the petition for review is granted and the cross-application for enforcement is denied as to the Board's Supplemental Decision and Order. The cross-application for enforcement is granted as to the Board's August 19, 1997 Decision and Order in which it concluded that CA violated section 8(a)(1) by its anti-union interrogations, threats and promises.

*So ordered.*

---

**3.** In light of this holding we need not address CA's other objections to the finding of violation or to the remedy imposed therefor.